ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-cv-246-H

MICHAEL E. JOHNSON, RICHIE CHESSER
STEPHEN HERMAN, ROBERT K. MITCHELL,
ANGEL PASCUAL, and JENNIFER M. PONCE,
on behalf of themselves and all other similarly-situated
current and former employees of
Corrections Corporation of America, Inc.,                        PLAINTIFFS,

v.

VERIFIED CLASS ACTION AND
COLLECTIVE ACTION COMPLAINT

CORRECTIONS CORPORATION OF AMERICA,                              DEFENDANT.

    Serve: CT Corporation System
           306 W. Main St., Suite 512
           Frankfort, Kentucky 40601

\* \* \* \* \* \* \* \* \* \* \*

Come the Plaintiffs, Michael E. Johnson, Richie Chesser, Stephen Herman, Angel Pascual, and Jennifer M. Ponce (collectively, "the Named Plaintiffs"), individually and on behalf of all other similarly situated current and former employees of the Corrections Corporation of America ("CCA"), at the Marion Adjustment Center, St. Mary, Kentucky, by counsel, and for their Verified Class Action and Collective Action Complaint, state as follows:

JURISDICTION, VENUE, AND PARTIES

1.    This action is brought pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the Kentucky Wage and Hour Act ("the Kentucky Act"), KRS Chapter 337, to recover from CCA unpaid overtime and other compensation, interest thereon, liquidated damages, costs of suit, and attorney's fees. This action is authorized by 29

U.S.C. § 216(b), and subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1376.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because CCA resides in this District and because a substantial part of the events and/or omissions giving rise to this claim occurred in this District.

3. CCA is a Maryland corporation with headquarters in Nashville, Tennessee. On information and belief, CCA operates the MAC in St. Mary, Kentucky, pursuant to a contract with the Commonwealth of Kentucky.

4. CCA has therefore availed itself of the privilege of doing business within the Commonwealth of Kentucky, and is subject to this Court's personal jurisdiction.

5. This action is brought by the Named Plaintiffs, individually and on behalf of all other individuals currently and formerly employed by CCA as Shift Supervisors and Assistant Shift Supervisors at the MAC from May 11, 2007, to the present (hereinafter, all such individuals are described as "the MAC Employees").

6. Named Plaintiff Michael E. Johnson is a resident of Campbellsville, Kentucky, and was employed by CCA beginning November 15, 2010. He has held the position of Assistant Shift Supervisor since November 2, 2011. He currently works on the Day Shift.

7. Named Plaintiff Richie Chesser is a resident of Springfield, Kentucky, and was employed by CCA between Spring of 2008 and the Spring of 2012. At the time he terminated his employment with CCA, he held the position of Assistant Shift Supervisor and worked on the Day Shift.

8. Named Plaintiff Stephen Herman is a resident of Lancaster, Kentucky, and has been employed by CCA since January 2006. He currently holds the position of Assistant Shift Supervisor and works on the Day Shift.

9. Named Plaintiff Robert K. Mitchell is a resident of Springfield, Kentucky, and has been employed by CCA since April 2004. He currently holds the position of Assistant Shift Supervisor and works on the Night Shift.

10. Named Plaintiff Angel Pascual is a resident of Bardstown, Kentucky, and was employed by CCA between September 2006 and October 2011. At the time he terminated his position with CCA, he held the position of Assistant Shift Supervisor and worked on the Day Shift.

11. Named Plaintiff Jennifer M. Ponce is a resident of Lebanon, Kentucky, and has been employed by CCA since 2004. She currently holds the position of Shift Supervisor and works on the Night Shift. She previously held the position of "Administrative Captain."

## FACTUAL ALLEGATIONS

12. Each Named Plaintiff is either currently or formerly employed by CCA as a Shift Supervisor (sometimes internally called "Captain") or Assistant Shift Supervisor (sometimes internally called "Lieutenant") at the MAC.

13. CCA is, and at all times relevant to this action has been, an "employer" subject to the provisions of the FLSA and the Kentucky Act.

14. The Named Plaintiffs, and all other similarly situated current and former MAC Employees, are and at all times relevant to this action have been, "employees" entitled to the protections of the FLSA and the Kentucky Act.

15. CCA is, and at all times relevant to this action has been, subject to the requirement under 29 U.S.C. § 207 and KRS 337.285 that employees may not work more than forty (40) hours per week without receiving "overtime" compensation at a rate of not less than one and one-half times the regular rate of salary.

16. CCA is, and at all times relevant to this action has been, subject to the requirement that full-time employees must receive a bona fide meal period during which they are not to be on duty or required to perform any active or inactive work duties, as set out in 29 CFR 785.19(a) and KRS 337.355.

17. CCA is, and at all times relevant to this action has been, subject to the requirement that full-time employees must receive bona fide rest periods of at least ten (10) minutes for every four (4) hours worked, which shall be in addition to the employees' statutory meal periods and which are compensable work time, as set out in 29 CFR 785.19 and KRS 337.365

18. CCA classifies, and at all times relevant to this action has classified, the positions of Shift Supervisor and Assistant Shift Supervisor as "exempt" from the overtime requirements imposed by the FLSA and the Kentucky Act.

19. CCA requires the MAC Employees to work a minimum of eighty (80) hours during a two-week work period.

20. CCA requires the MAC Employees, including the Named Plaintiffs, to work in one of two shifts:  Day Shift, from 6 a.m. to 6 p.m., and Night Shift, 6 p.m. to 6 a.m.

21. Approximately 825 inmates are in CCA's custody and control at the MAC.  Some of those inmates have been charged with or convicted of violent and dangerous crimes.

22. The MAC is a 65-acre facility consisting of minimum security areas ("St. Mary's Unit" and "Bluegrass Unit") and a medium security area ("Columbia Unit").

23. The MAC Employees, including the Named Plaintiffs, are responsible for the safety, health, and security of the inmates housed in the MAC and for protecting the public from any threat of escape by any inmate.

24. The primary duties of the MAC Employees, including the Named Plaintiffs, consist of detaining, supervising, guarding, and responding to suspected and convicted criminals housed in the MAC.

25. During any Shift, and in either the minimum security area or the Columbia Unit, it is common for a "Code" to signal an emergency situation concerning the safety or security of an inmate or staff member.

26. The MAC Employees, including the Named Plaintiffs, are responsible for responding to Codes.

27. The MAC Employees, including the Named Plaintiffs, are required to restrain inmates using handcuffs and/or pepper spray (or "OC spray"), and are occasionally the only CCA employees working at the facility who carry this equipment during their Shifts.

28. The MAC Employees, including the Named Plaintiffs, are required to supervise inmates, to break-up altercations between inmates and between inmates and staff, to respond to inmate questions, to place inmates in segregation, to conduct inmate counts during daily lock-downs, to escort inmates to and from medical appointments and work details, to perform perimeter checks, to supervise and to serve inmates during meal times, and to fill posts within inmate living areas (including segregation units) when relieving custody officers on break and at other times.

29. CCA has a policy and/or practice of requiring and permitting the MAC Employees, including the Named Plaintiffs, to perform uncompensated work prior to their scheduled Shifts. This pre-shift work includes: arriving at the Minimum Security area of the MAC; "swiping in" to the facility using Employee Identification cards; signing Post Orders; obtaining and equipping themselves with required equipment (including handcuffs, pepper spray,

and a radio); passing through security scanners; preparing or completing reports; and determining whether the Shift is sufficiently staffed.

30. In addition, CCA has a policy and/or practice of requiring and permitting the MAC Employees assigned to Columbia Unit to perform the following uncompensated work prior to their Scheduled Shifts in addition to the work described in Paragraph 29: traveling from the Minimum Security unit to Columbia Unit; removing all equipment, shoes, and belts after arriving at Columbia Unit; passing through a security scanner; retrieving all equipment, shoes, and belts; and "swiping in" to Columbia Unit using the Employee Identification card.

31. CCA has a policy and/or practice of requiring and permitting the MAC Employees, including the Named Plaintiffs, to remain working and on active duty at the conclusion of their scheduled Shifts. This post-shift work includes: the requirement that the MAC Employees cannot leave their assigned areas until the replacements for those areas arrive; turning in equipment; ensuring that paperwork is completed; and ensuring that their Shift is adequately staffed for the following work day; and, if departing the MAC after 6:30 p.m., waiting for the facility gate to be opened.

32. In addition, the MAC Employees assigned to Columbia Unit are required to travel from Columbia Unit to the minimum security area after the conclusion of their Shifts.

33. For example, MAC Employees are routinely required to arrive as early as 5:30 a.m. prior to the start of the Day Shift and routinely not permitted to leave MAC until as late as 7 p.m.

34. The pre-shift and post-shift work described in Paragraphs 29-31 are integral and indispensable to the principal activities of the MAC Employees, and CCA derives a substantial benefit from the Plaintiffs' performance of these pre-shift and post-shift activities.

35. CCA has a policy and/or practice of depriving the MAC Employees of meal breaks and rest breaks during which they are relieved from duty.

36. CCA has a policy and/or practice of requiring the MAC Employees to regularly attend training sessions without pay.

37. Training sessions are scheduled by CCA for the MAC Employees' regularly-scheduled days off work.

38. Some training sessions are held inside the facility, during which the MAC Employees are regularly required to perform their usual job duties without pay.

39. CCA has a policy of requiring the MAC Employees to be constantly available for, and to perform, work (such as completing reports and answering questions pertaining to inmates) during hours outside of their assigned Shifts.

40. CCA has a policy and practice of requiring some of the MAC Employees, such as Jennifer M. Ponce, to provide services to CCA as a member of the Special Operations Response Team ("SORT"), for which these MAC Employees receive no overtime compensation.

41. Because the MAC Employees have been classified as "exempt" by CCA, they are denied pay and overtime pay for all work performed by them in excess of forty (40) hours per workweek. This work includes, but is not limited to, the above-described pre-shift work, post-shift work, required training, responding to phone calls, and (in the case of members of the SORT team) providing services and responding to emergencies when the SORT team is called.

42. Pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, the Named Plaintiffs bring this action on behalf of themselves and on behalf of a Class (collective or otherwise) of all persons who were, are, or will be Shift Supervisors and/or Assistant Shift Supervisors employed by CCA and the MAC from May 11, 2007, to the present.

43. The Named Plaintiffs seek the certification of a Class (collective or otherwise), to be described as follows: all individuals who were, area, or will be Shift Supervisors and Assistant Shift Supervisors at the MAC from May 11, 2007, to the present.

## COUNT ONE – VIOLATION OF FLSA

44. The Plaintiffs repeat and incorporate by reference each allegation set forth above as if fully set forth herein.

45. CCA has violated the FLSA, deliberately, willfully, intentionally, and otherwise, by classifying the MAC Employees as "exempt" and by refusing to pay overtime or any other compensation to the MAC Employees for the time which they spend working and on active duty beyond forty (40) hours per week.

46. CCA has violated the FLSA, deliberately, willfully, intentionally, and otherwise, by refusing to pay overtime or any other compensation to the MAC Employees for the time which they spend working and on duty prior to the start of their scheduled Shifts.

47. CCA has violated the FLSA, deliberately, willfully, intentionally, and otherwise, by refusing to pay overtime or any other compensation to the MAC Employees for the time which they spend working and on duty after the end of their scheduled Shifts.

48. CCA has violated the FLSA, deliberately, willfully, intentionally, and otherwise, by refusing to pay overtime or any other compensation to the MAC Employees for the time which they spend working and on duty during the required training sessions.

49. CCA has violated the FLSA, deliberately, willfully, intentionally, and otherwise, by refusing to pay overtime or any other compensation to MAC Employees who serve on the SORT team for the time which they spend performing SORT duties.

50. CCA has violated the FLSA, deliberately, willfully, intentionally, and otherwise, by depriving the Named Plaintiffs and all other similarly-situated MAC Employees of meal breaks and lunch breaks during which they are relieved from duty.

51. As a result of CCA's violations of the FLSA, willful, deliberate, intentional and otherwise, the Named Plaintiffs and all other similarly-situated MAC Employees have suffered, and continue to suffer, damages in the form of earned but unpaid wages (for regular time and overtime), as well as liquidated damages under 29 U.S.C. § 216(b), in a total amount to be determined at trial.

52. As a result of CCA's violations of the FLSA, willful, deliberate, intentional and otherwise, the Named Plaintiffs and all other similarly-situated MAC Employees are entitled to recover their attorneys' fees and costs incurred in bringing this action under 29 U.S.C. § 216(b).

### COUNT TWO – VIOLATION OF KRS CHAPTER 337

53. The Plaintiffs repeat and incorporate by reference each allegation set forth above as if fully set forth herein.

54. CCA has violated the Kentucky Act, KRS Chapter 337, willfully, deliberately, intentionally, and otherwise, by classifying the MAC Employees as "exempt" and by refusing to pay overtime or any other compensation to the MAC Employees for the time which they spend working and on duty prior to the start of their scheduled Shifts.

55. CCA has violated the Kentucky Act, deliberately, willfully, intentionally, and otherwise, by refusing to pay overtime or any other compensation to the MAC Employees for the time which they spend working and on duty after the end of their scheduled Shifts.

56. CCA has violated the Kentucky Act, deliberately, willfully, intentionally, and otherwise, by refusing to pay overtime or any other compensation to the MAC Employees for the time which they spend working and on duty during the required training sessions.

57. CCA has violated the Kentucky Act, deliberately, willfully, intentionally, and otherwise, by refusing to pay overtime or any other compensation to MAC Employees who serve on the SORT team for the time which they spend performing SORT duties.

58. CCA has violated the Kentucky Act, deliberately, willfully, intentionally, and otherwise, by depriving the Named Plaintiffs and all other similarly-situated MAC Employees of meal breaks and lunch breaks during which they are relieved from duty.

59. As a result of CCA's violations of the Kentucky Act, willful, deliberate, intentional and otherwise, the Named Plaintiffs and all other similarly-situated MAC Employees have suffered, and continue to suffer, damages in the form of earned but unpaid wages (for regular time and overtime), as well as liquidated damages under KRS 337.385, in a total amount to be determined at trial.

60. As a result of CCA's violations of the Kentucky Act, willful, deliberate, intentional and otherwise, the Named Plaintiffs and all other similarly-situated MAC Employees are entitled to recover their attorneys' fees and costs incurred in bringing this action under KRS 337.385.

**COUNT THREE – TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

61. The Plaintiffs repeat and incorporate by reference each allegation set forth above as if fully set forth herein.

62. Through the actions and inactions described in this Complaint, CCA has deprived and continues to deprive the Named Plaintiffs and all other similarly-situated MAC Employees of their concrete, personal rights under the FLSA and the Kentucky Act.

63. CCA's continued violations of the FLSA and the Kentucky Act will result in immediate and irreparable harm to the Named Plaintiffs and all other similarly-situated MAC Employees.

64. Pursuant to Fed. R. Civ. P. 65.01, the Named Plaintiffs request, on behalf of themselves and on behalf of all other similarly situated MAC Employees, the issuance of temporary and permanent injunctive relief against the following practices, policies, and procedures of CCA, pending the conclusion of this action:

   a. Classifying the MAC Employees as "exempt" from the overtime requirements of the FLSA and the Kentucky Act;

   b. Failing to provide the MAC Employees with the meal and rest periods required by law; and

   c. Refusing to pay the MAC Employees overtime and other compensation for the time which they spend working and on active duty beyond forty (40) hours per work week due to CCA policies, procedures, practices, or rules, including but not limited to the requirement that MAC Employees begin work prior to the start of their scheduled Shifts and continue work after the conclusion of their Scheduled Shifts, and the requirement that MAC Employees attend training and/or performing SORT duties on the days when they are not scheduled to work.

**COUNT FOUR - CERTIFICATION OF COLLECTIVE AND CLASS ACTION**

65. The Named Plaintiffs repeat and incorporate by reference each allegation set forth above as if fully set forth herein.

66. The Named Plaintiffs respectfully request the Court enter an Order permitting this action to proceed as a collective action pursuant to 29 U.S.C. § 216(b), consisting of the following collective class: all individuals currently and formerly employed by CCA as Shift Supervisors or Assistant Shift Supervisors at the MAC at any time from May 11, 2007, to the present.

67. The Named Plaintiffs additionally request the Court to certify a class consisting of individuals currently and formerly employed by CCA as Shift Supervisors or Assistant Shift Supervisors at the MAC at any time from May 11, 2007, to the present pursuant to Fed. R. Civ. P. 23 as to the Named Plaintiffs' claims for violations of the Kentucky Act.

68. The size of the requested Class is so numerous that joinder of the individual members may be impracticable.

69. The Named Plaintiffs are adequate class representatives because they are directly impacted by the CCA's classification of their positions as exempt. The interests of the Named Plaintiffs are not antagonistic to, or in conflict with, the interests of the other Class members or with the Class as a whole.

70. The attorneys representing the Named Plaintiffs have experience in handling complex litigation, specifically including wage-and-hour and class actions.

71. Common questions of law and fact predominate among the Class members. These common questions include questions as to the legality of the CCA's classification of Shift Supervisors and Assistant Shift Supervisors as exempt, the compensability of work performed prior to and after the scheduled start and end times of the Shifts, and entitlement to overtime compensation, to injunctive relief to compel the CCA to comply with the FLSA and the Kentucky Act and to compensatory and liquidated damages due to CCA's violations of the FLSA and the Kentucky Act.

72. The claims of the Named Plaintiffs are typical of the claims of the Class because all Class members are current or former Shift Supervisors or Assistant Shift Supervisors employed by CCA at the MAC who have been harmed by CCA's violations of the FLSA and the Kentucky Act.

73. The Named Plaintiffs are similarly situated to the Class and to one another in terms of their job responsibilities, titles, and salaries and because the Named Plaintiffs as well as all Class members have been subject to the same policies, procedures, practices, and rules imposed by CCA.

74. A proposed Opt-In form for Class members prepared in compliance with 29 U.S.C. § 216(b) is attached as Exhibit A to this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, on behalf of themselves and on behalf of all other individuals currently and formerly employed by CCA as Shift Supervisors or Assistant Shift Supervisors at the MAC at any time from May 11, 2007, to the present, respectfully request:

A. The certification of a Class (collective and otherwise) pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 to be described as and to include: all persons who were, are, or will be employed by CCA as Shift Supervisors or Assistant Shift Supervisors at the MAC at any time from May 11, 2007, to the present;

B. The issuance of temporary and permanent injunctive relief against the following policies, practices, and rules of CCA:

   a. The classification of the MAC Employees as "exempt" from the overtime requirements of the FLSA and the Kentucky Act;

   b. CCA's failure to provide the MAC Employees with the meal and rest periods required by law; and

   c. CCA's refusal to pay the MAC Employees overtime and other compensation for the time which they spend working and on active duty beyond forty (40) hours per work week due to CCA policies, procedures, practices, or rules, including but not limited to the requirement that MAC Employees begin work

    prior to the start of their scheduled Shifts and continue work after the conclusion of their Scheduled Shifts, and the requirement that MAC Employees attend training on the days when they are not scheduled to work.

C. An award of compensatory and liquidated damages;

D. Reasonable attorneys' fees and costs;

E. A trial by jury on all counts so triable; and

F. Any and all other relief to which they appear entitled.

        /s/ Thomas W. Miller
        THOMAS W. MILLER
        DON A. PISACANO
        ELIZABETH C. WOODFORD
        MILLER, GRIFFIN & MARKS, P.S.C.
        271 West Short Street, Suite 600
        Lexington, Kentucky 40507
        Telephone: (859) 255-6676
        Facsimile: (859) 259-1562
        Email: twm@kentuckylaw.com

F:\Share\ew\Pldgs\Johnson.CCA complaint final.docx