MICHAEL E. JOHNSON, et al, on behalf of
themselves and all other similarly situated
Current and former employees of
Corrections Corporation of America, Inc.,            PLAINTIFFS,

v.

CORRECTIONS CORPORATION OF AMERICA,           DEFENDANT.

## JOINT MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT AND MEMORANDUM IN SUPPORT

\* \* \* \* \* \* \* \* \*

Come the Parties, through their counsel, and hereby jointly move the Court for approval of the settlement reached in this conditionally certified Fair Labor Standards Act ("FLSA") collective action. A copy of the Parties' Settlement Agreement is attached hereto as Exhibit A (with Exhibit 1 to the Settlement Agreement filed under seal) for the Court's review and approval.

### MEMORANDUM IN SUPPORT

This FLSA action was brought and prosecuted on behalf of twenty-five (25) current and former Assistant Shift Supervisors (a/k/a Lieutenants) and Shift Supervisors (a/k/a Captains) who worked in one of two (2) CCA facilities located in Kentucky: the Marion Adjustment Center ("MAC") and the Otter Creek Correctional Facility ("OC"). The Parties vigorously prosecuted and defended this misclassification action for approximately one and one-half years before ultimately reaching the resolution detailed below and as set forth in the Settlement Agreement. The settlement includes damage payments to all Plaintiffs based upon hours worked

and assumed overtime, and attorneys' fees and costs. Given that this settlement is a fair and reasonable compromise of a bona fide dispute, the settlement should be approved.

**A.      Facts and Procedural History**

On May 11, 2012, Plaintiffs filed a Complaint asserting a claim under the FLSA as a collective action under 29 U.S.C. § 216(b). Plaintiffs alleged that CCA misclassified its Assistant Shift Supervisors and Supervisors at the MAC and OC facilities as exempt from the FLSA's overtime requirements and thereby failed to pay them overtime compensation for hours worked in excess of forty (40) hours per week. (D.E. 1).  The Complaint additionally alleged violations of state wage and hour laws concerning meal and rest breaks and relating to the Plaintiffs' classification as exempt employees. Plaintiffs subsequently filed First and Second Amended Complaints to include additional named Plaintiffs and to refine their allegations. (D.E. 5 and 25). CCA filed Answers to both the First and Second Amended Complaint denying Plaintiffs' allegations and contending, among other defenses, that Plaintiffs were properly classified as exempt under both federal and state wage and hour laws and were offered all required meal and rest breaks.. (D.E. 10 and 27).

On October 17, 2012, to avoid the expense associated with motion practice concerning initial conditional certification, the Parties filed a Stipulation and Joint Motion Regarding Conditional Certification. (D.E. 23). The Parties stipulated to conditional certification of a group of current and former Assistant Shift Supervisors and Shift Supervisors who worked at the MAC and OC facilities.  On October 19, 2012, the Court granted the Parties' Stipulation and Joint Motion Regarding Conditional Certification. (D.E. 24). Thereafter, notice of the lawsuit was mailed out to eligible current and former CCA employees, and approximately twenty-five (25)

Assistant Shift Supervisors and Shift Supervisors filed (and did not withdraw) consent to join forms in the action.

The Consent Forms executed by the individuals who joined the conditionally certified class advised those individuals of the terms and conditions under which were joining the litigation:

> By joining this lawsuit, I designate the Plaintiffs named above [i.e., Michael E. Johnson, Richie Chesser, Stephen Herman, Robert K. Mitchell, Angel Pascual, Jennifer Ponce, Victoria Montgomery, Maurice Burke, Jr., Christy Branham, Matthew Crittendon, Amy Tackett and Troy Wilson] as my representatives, and allow them to the fullest extent possible, to make decisions on my behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit. I understand I will be bound by any ruling, settlement or judgment whether favorable or unfavorable. I choose to be represented by Miller, Griffin & Marks, P.S.C., and other attorneys with whom they may associate.

Throughout the course of the litigation, the Parties engaged in extensive written discovery. The Parties exchanged Rule 26 disclosures. Plaintiffs also propounded Interrogatories and Requests for Production of Documents upon CCA, and CCA, in turn, served Interrogatories and Requests for Production upon each and every Plaintiff. These discovery requests cumulatively resulted in the production of over twenty thousand pages of documentary evidence, including payroll records, personnel files, corporate policies and procedures, and resumes – all of which were examined in detail by the Parties' respective counsel. In addition, nine (9) depositions of current and former CCA employees were taken.

**B.     The Settlement Agreement**

On September 30, 2013, the Parties engaged in an all-day mediation under the direction of Magistrate Judge James D. Moyer. Although no settlement was reached at that time, the Parties continued to engage in settlement negotiations and legal and factual analyses of their

respective claims and defenses. A tentative settlement was ultimately reached between the Parties on November 4, 2013, with further details finalized on November 21, 2013, and memorialized in the attached written Settlement Agreement.

The Settlement Agreement provides that CCA will pay an amount to settle Plaintiffs' claims for unpaid wages and attorneys' fees and costs and expenses in exchange for a release of their wage and hour claims related to their employment as Assistant Shift Supervisors and Shift Supervisors under state and federal law.

The settlement will be distributed to all Plaintiffs based on an equitable formula approved by all Plaintiffs and counsel that takes into account the number of weeks worked by each Plaintiff, the number of overtime hours assumed to have been worked by each Plaintiff, the salary of each Plaintiff, whether the individual participated in depositions, and whether the individual was a named or lead Plaintiff in the action.

Upon the Final Effective Date of the Settlement Agreement (as that term is defined in the Settlement Agreement), a settlement check will be distributed to each Plaintiff. One-half of each Plaintiff's settlement amount will be allocated to his or her claim for wages and will be reported on a W-2 tax form, and one-half will represent liquidated damages and other non-wage relief and will be reported on a 1099 tax form. Plaintiffs will have ninety (90) days to negotiate their settlement checks. In exchange for these settlement payments, each Plaintiff will be deemed to have released his/her claims as more fully described in the Settlement Agreement.

**ARGUMENT**

"As a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court." *Gentrup v. Renovo Services, LLC*, 2011 WL 2532922 (S.D. Ohio June 24, 2011) (citing *Lynn's Food Stores,*

*Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)). "If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues,' such as FLSA coverage or computation of back wages that are 'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id*. Factors to be considered by the Court in evaluating the proposed settlement include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement

*Id*.

Here, FLSA coverage and the computation of back wages were actually in dispute. There is no risk of fraud or collusion, as the proposed settlement is the product of contested litigation. In their Complaint, Plaintiffs alleged that Assistant Shift Supervisors and Shift Supervisors at CCA's MAC and OC facilities were misclassified by CCA as exempt from the FLSA's overtime laws and state wage laws and were not provided with meal and rest breaks required under state law. In its Answer, CCA denied Plaintiffs' material factual allegations and asserted numerous defenses that it argued would defeat Plaintiffs' claims in whole or in part. During more than a year of litigation, the Parties extensively investigated and litigated Plaintiffs' claims, including through written discovery, the exchange and analysis of voluminous documents and data, and depositions. In addition, the Parties also exhaustively analyzed the various legal issues implicated in this case, including the executive and administrative exemptions, the salary basis test, proper and/or improper deductions taken from employees' pay checks, and the appropriate methodology for calculating potential damages. Prior to settlement, the Parties had the opportunity to analyze pertinent factual and legal issues and assess the strengths and weaknesses

of their claims and defenses. In addition, while the Parties stipulated to conditional certification, the issue of decertification remained.

The proposed settlement is fair and reasonable. Continued litigation would be complex, expensive, and lengthy. Numerous depositions would be conducted, including the depositions of all twenty-five Plaintiffs and several current and former CCA employees. CCA would also likely file a motion for decertification of the collective action. Furthermore, the Parties anticipate filing cross-motions for summary judgment on the issue of the appropriate method for damage calculations in this case. That determination would involve an analysis of the applicability of the so-called "half-time" method to a misclassification case, which is an issue that has not been addressed by the Sixth Circuit Court of Appeals. Therefore, it is probable that the non-prevailing party would file an appeal, from the summary judgment order. . Accordingly, it is likely that further litigation of this case would last years and that the Parties would incur hundreds of thousands of additional dollars in attorneys' fees and costs.

Also, given the factual and legal complexities of the case, it is difficult to gauge Plaintiffs' likelihood of success on the merits at trial. To prevail, Plaintiffs would have to demonstrate that they were improperly classified as exempt. And, even if the Plaintiffs were completely successful with regard to the disputed issues of law, the calculation of damages would be very difficult, in large part because the Parties disagree on the proper method for calculation of those damages. CCA contends that the "half-time" rate should be applied, while Plaintiffs contend that the appropriate measure of damages is the "time-and-a-half" rate.

Accordingly, if this litigation continues, the Parties would face many obstacles, including (i) extensive additional discovery; (ii) decertification motion practice; (iii) (ii) cross-motions for at least partial summary judgment, and, (iv) at least one jury trial (or, in the event the

action was decertified, numerous jury trials). Although it is possible that the Plaintiffs, if successful at trial, might recover more at trial than the sums they are due to receive under the Settlement Agreement, it is also very likely that their recovery would have been less or nothing at all, particularly if were CCA to succeed in proving Assistant Shift Supervisors and Shift Supervisors were properly classified as exempt. Furthermore, in the face of these obstacles, this settlement brings Plaintiffs a monetary recovery now, as opposed to years from now, and provides certainty regarding the outcome.

Plaintiffs' counsel has notified each Plaintiff of the terms of the Settlement Agreement, as well as the risks of benefits of accepting those terms, and no Plaintiff has objected to the terms. Accordingly, there is no question that the Parties are fully informed regarding the risks and benefits associated with proceeding with this case versus settling.

The public interest also weighs in favor of settlement. "If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to promote the policy of encouraging settlement of litigation." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Lynn's Food Stores, Inc*., 679 F.2d at 1353).

Finally, the Settlement Agreement also includes an award for attorneys' fees and costs. An award of attorneys' fees in a collective action under the FLSA is to be determined by the "lodestar" method, which multiplies the number of hours reasonably expended by Plaintiffs' counsel by an appropriate hourly rate. *Collins v. Sanderson Farms, Inc*., 2008 WL 2811225 (E.D. La. 2008). Although Courts may apply various equitable considerations to adjust the lodestar amount upward or downward, "[t]here is a strong presumption . . . that the lodestar figure represents a 'reasonable' fee." *Tlacoapa v. Carregal*, 386 F.Supp.2d 362, 373 (S.D.N.Y.

7

2005). Additionally, in FLSA cases, Courts caution against any "undue emphasis on the amount of the plaintiff's recovery" in determining the reasonableness of attorneys' fees, because the attorneys' award in an FLSA case "encourages the vindication of congressionally identified policies and rights." "Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Id*. The Parties have filed a motion for leave to submit the time-keeping records of Plaintiffs' counsel (Exhibit B) under seal. These records prove that the amount of attorneys' fees awarded under the Settlement Agreement is considerably less than the amount yielded by the lodestar method, and, therefore, it should be approved by the Court as fair and reasonable.

**CONCLUSION**

The Settlement was reached as a result of contested litigation and resolves a bona fide dispute between the parties. The settlement is fair, reasonable, and adequate, and provides Plaintiffs with significant, immediate monetary relief. For these reasons, and for those set forth above, the Parties respectfully request that the Court approve the settlement.

Respectfully submitted,

/s/ *Thomas W. Miller*
THOMAS W. MILLER
ELIZABETH C. WOODFORD
DON A. PISACANO
MILLER, GRIFFIN & MARKS, P.S.C.
271 W. Short Street, Suite 600
Lexington, Kentucky 40507
Telephone: (859) 255-6676
Facsimile: (859) 259-1562
ATTORNEYS FOR PLAINTIFF

/s/ *Margaret T. Blackwood*
MARGARET T. BLACKWOOD
ROBERT W. PRITCHARD
LITTLER MENDELSON, P.C.
3344 Peachtree Road, Suite 1500
Atlanta, Georgia 30326
Telephone: (404) 760-3967
Facsimile: (404) 529-4456
ATTORNEYS FOR DEFENDANT

f:\share\ew\pldgs\cca joint motion approve settlement final 3.docx